IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

**HASSAN AWADA, et al.,**                      CASE NO. 3:24 CV 1803

    Plaintiffs,

    v.                                          JUDGE JAMES R. KNEPP II

**ASSISTANT SECRETARY FOR**
**CONSULAR AFFAIRS,**
**U.S. DEPARTMENT OF STATE, et al.,**

                                               **MEMORANDUM OPINION AND**
    Defendants.                           **ORDER**

### INTRODUCTION

Currently pending in this writ of mandamus case is Defendants'[1] Motion to Dismiss (Doc. 7). Plaintiffs Hassan Awada and Esraa Taleb oppose (Doc. 8), and Defendants reply (Doc. 9). Both parties also submitted notices of supplemental authority (Docs. 10, 11). For the reasons set forth below, the Court grants Defendants' Motion.

### BACKGROUND

Plaintiffs bring this action to "compel Defendants and those acting under them to immediately and forthwith take all appropriate action to issue a decision on Plaintiff, Ms. Esraa Taleb's, Immigrant Visa application." (Doc. 1, at ¶ 1). Plaintiffs assert jurisdiction is proper under the Mandamus Act, 28 U.S.C. § 1361 and the Administrative Procedure Act ("APA"), 5 U.S.C. § 555(b) and 704. *Id.* at ¶¶ 4-6.

---

1. Defendants in the instant case are the following United States Government officials: Assistant Secretary for Consular Affairs, U.S. Department of State; Assistant Secretary for Visa Services, U.S. Department of State; Ambassador to the Lebanese Republic, Counsel General, U.S. Embassy – Beirut, Lebanon; Secretary, U.S. Department of Homeland Security; Director of Federal Bureau of Investigations, and the U.S. Attorney General. *See* Doc. 7.

*Relevant Statutory Background*

"A noncitizen seeking a visa based on a familial relationship with a U.S. citizen must complete a process prescribed by the Immigration and Nationality Act ('INA'), 8 U.S.C. §§ 1104, *et seq.*" *Al-Obaidi v. Blinken*, 2024 WL 4536488, at *2 (M.D. Tenn.).[2] At the first step, the U.S. citizen files a Form I-130, "Petition for Alien Relative," with the United States Citizenship and Immigration Services ("USCIS") on behalf on the noncitizen beneficiary, seeking to have the noncitizen classified as an "immediate relative." 8 U.S.C. §§ 1153(f), 1154(a). If USCIS approves the I-130 petition and classifies the beneficiary as an immediate relative, then "the beneficiary may apply for an immigrant visa." *Al-Obaidi*, 2024 WL 4536488, at *2 (citing 8 U.S.C. §§ 1201(a), 1202(a)). The approval of an I-130 Petition does not grant any immigration status or benefit. *See* 22 C.F.R. § 42.41 ("The approval of a petition does not relieve the alien of the burden of establishing to the satisfaction of the consular officer that the alien is eligible in all respects to receive a visa.").

At the second step, USCIS sends the approved I-130 petition to the Department of State's National Visa Center ("NVC"). The noncitizen seeking the visa then must file a Form DS-260 Application for Immigrant Visa and Alien Registration. 8 U.S.C. § 1202(a); 22 C.F.R. §§ 42.61(a), 42.62(a)-(b), 42.63, 42.65. One requirement of the visa application process is that the individual seeking a visa must attend an in-person interview with a consular officer (with certain exceptions not applicable here). *See* 8 U.S.C. § 1202(h); 22 C.F.R. § 42.62. The individual fills out the visa application in the presence of the officer at the interview. 8 U.S.C. § 1202(e). It is the individual's burden to establish that she is eligible to receive a visa and not inadmissible under any provision of the INA. 8 U.S.C. § 1361.

---

2. The relevant statutes and regulations use the word "alien". Caselaw often uses the terms "noncitizen" or "foreign national". The Court uses the three terms interchangeably herein.

A consular officer must refuse a visa if he or she determines the individual "is ineligible to receive a visa . . . under section 1182 of this title, or any other provision of law," "the application fails to comply" with the INA or regulations issued thereunder, or "the consular officer knows or has reason to believe that such alien is ineligible to receive a visa[.]" 8 U.S.C. § 1201(g). The ultimate decision regarding whether to issue or refuse an applicant's visa rests with the consular officer. *Id.* at § 1201(a). And it is the applicant's burden to establish eligibility for the visa to the satisfaction of the consular officer. 8 U.S.C. § 1361 ("If such person fails to establish to the satisfaction of the consular officer that he is eligible to receive a visa or other document required for entry, no visa or other document required for entry shall be issued to such person[.]").

Once the consular officer conducts the interview with the applicant, the law instructs that the consular officer "must":

(1) "issue the visa,"

(2) "refuse the visa under INA 212(a) or 221(g) or other applicable law or,"

(3) "pursuant to an outstanding order under INA 243(d), discontinue granting the visa."

22 C.F.R. § 42.81(a); *see also* 8 U.S.C. § 1201(g).

*Factual Background*

Plaintiff Dr. Hassan Awada is a United States citizen. (Doc. 1 at ¶ 9). In October 2020, he filed a Form I-130, Petition for Alien Relative, on behalf of his wife, Plaintiff Esraa Taleb. *Id.* at ¶ 19. That Petition was approved on November 3, 2022. *Id.*; *see also* Doc. 1-3. Taleb then filed an Application for Immigrant Visa with the U.S. Embassy in Beirut, Lebanon. (Doc. 1, at ¶ 10). Taleb appeared for a visa interview at the U.S. Embassy in Beirut on June 5, 2023. *Id.* at ¶ 20-21. Taleb "answered all the officer's questions, and provided all the requested documentation." *Id.* at

3

¶ 21. The officer then told Taleb that her case would undergo "administrative processing" and "gave no further instruction." *Id.*; Doc. 1-1 (Taleb Declaration). The Government presents a declaration stating that the consular officer "refused" the visa application under INA § 221(g), 8 U.S.C. § 1201(g), "as the officer determined that Ms. Taleb failed to demonstrate her eligibility for the visa sought." (Doc. 7-2, at ¶ 8) (Declaration of U.S. Dep't of State Attorney-Advisor Rachel Ann Peterson). "The consular officer determined that additional security screening was required." *Id.* The visa application "remains refused" and "[a]dditional security screening is ongoing." *Id.* at ¶ 9.

Plaintiffs allege that in September 2024, the Consular Electronic Application Center ("CEAC") website or portal was updated to reflect the status of the visa application was "refused". (Doc. 1, at ¶ 27); Doc. 1-13. Defendants provide evidence that as of January 29, 2025, it remains this way. *See* Doc. 7-2. The Court has confirmed the CEAC website still reflects the application was "refused" and as of August 14, 2025, states that the case was last updated July 18, 2025. *See* Search results for "BRT2022810003," U.S. Dep't of State, Consular Elec. Application Ctr., Visa Status Check, https://ceac.state.gov/ceacstattracker/status.aspx (last visited August 14, 2025).[3] The CEAC website status update elaborates: "A U.S. consular officer has adjudicated and refused your visa application. Please follow any instructions provided by the consular officer. If you were informed by the consular officer that your case was refused for administrative processing, your case will remain refused while undergoing such processing. You

---

3. The Court takes judicial notice of Taleb's status on the CEAC website. *See* Fed. R. Evid. 201; *Kentucky v. Biden*, 23 F.4th 585, 599 n.8 (6th Cir. 2022) ("We may take judicial notice of generally known information or government websites[.]") (citing *Broom v. Shoop*, 963 F.3d 500, 509 (6th Cir. 2020); *see also Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 648 (7th Cir. 2011) ("We have recognized the authority of a court to take judicial notice of government websites.").

4

will receive another adjudication once such processing is complete." *See id.*; Docs. 1-13; 7-2. In their opposition brief, Plaintiffs characterize this as a "refusal that is subject to change[.]" (Doc. 8, at 4).

Plaintiffs have "repeatedly inquired into the status of Ms. Taleb's Immigrant Visa application to no avail." (Doc. 1, at ¶ 22); *see also* Docs. 1-6 to 1-17, Docs. 1-19 to 1-20 (inquiries from October 2023 through August 2024).

## STANDARD OF REVIEW

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges a court's subject matter jurisdiction. "Federal courts are courts of limited jurisdiction" and, "[u]nlike state trial courts, they do not have general jurisdiction to review questions of federal and state law[.]"*Ohio ex rel. Skaggs v. Brunner*, 549 F.3d 468, 474 (6th Cir. 2008). Instead, their authority is limited to deciding "cases that the Constitution and Congress have empowered them to resolve." *Id.* Consequently, "[i]t is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction[.]" *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (internal citations omitted).

Rule 12(b)(1) motions may challenge jurisdiction facially or factually. Fed. R. Civ. P. 12(b)(1); *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). In a facial attack, the challenger asserts the allegations contained in the complaint are insufficient on their face to invoke federal jurisdiction. *See In re Title Ins. Antitrust Cases*, 702 F. Supp. 2d 840, 884-85 (N.D. Ohio 2010). By contrast, in a factual attack such as Defendants mount here, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction. *Id.* A challenge to subject matter jurisdiction may be considered a factual attack

5

when the attack relies on extrinsic evidence, as opposed to the pleadings alone, to contest the truth of the allegations. *Id.*

## DISCUSSION

The parties dispute whether this Court has jurisdiction over Plaintiffs' claims under the APA or the Mandamus Act. Defendants contend Taleb's visa has been adjudicated (refused). As such, they assert that Plaintiffs have already received the only relief to which they are entitled and their claims are moot. Plaintiffs respond that the Government has not issued a final substantive denial of the visa, but rather only a "temporary and non-final" determination. (Doc. 8, at 2). They thus contend the Government has an "ongoing duty under 22 C.F.R. § 42.81(a) to make a definitive determination to 'issue or refuse' the visa." *Id.*

For the reasons discussed below, the Court agrees with Defendants and grants the motion to dismiss.

APA/Mandamus Act

Under the Mandamus Act, a court has authority "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. Mandamus relief is a drastic remedy that is "only to be reserved for extraordinary situations." *Maftoum v. Chavez*, 2007 WL 3203850, at *3 (E.D. Mich.) (citing *Cheney v. U.S. Dist. Ct. for the Dist. of Columbia*, 542 U.S. 367, 380 (2004)). A writ of mandamus "is only appropriate where petitioner has exhausted all administrative remedies and defendant official owes petitioner a clear and nondiscretionary duty." *Id.* (citing *Work v. United States ex rel. Rives*, 267 U.S. 175, 177-78 (1925)).

Similarly, under the APA, a federal agency is required "within a reasonable time . . . [to] proceed to conclude a matter presented to it." 5 U.S.C. § 555(b). The APA allows a court to

"compel agency action unlawfully withheld or unreasonably delayed[.]" 5 U.S.C. § 706(1). However, this remedy does not apply where the agency action at issue "is committed to agency discretion by law." 5 U.S.C. § 701(a)(2); *see also Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 63 (2004) ("[T]he only agency action that can be compelled under the APA is action legally *required*.").

"Thus, for jurisdiction to lie under both the APA and Mandamus Act, the Plaintiff must show that USCIS owed a non-discretionary duty to him and that it failed to act upon this duty." *Muminov v. Sessions*, 2018 WL 5298386, at *3 (N.D. Ohio). As a result, "[w]hen a petitioner seeks both mandamus relief and relief under the APA, courts apply the same principles and standards both to determine jurisdiction and to assess the merits." *Nelson v. United States*, 107 F. App'x 469, 471 (6th Cir. 2004).

Jurisdiction / Application to the Instant Case

"As courts of limited jurisdiction, federal courts may exercise only those powers authorized by the Constitution and statute." *Fisher v. Peters*, 249 F.3d 433, 444 (6th Cir. 2001). Under Article III of the U.S. Constitution, federal courts have jurisdiction over only "cases" and "controversies." U.S. Const. art. III § 2; *Lujan v. Defs. of Wildlife*, 504 U.S.555, 559-60 (1992). And for a federal court to have jurisdiction, a plaintiff must have, at a minimum, constitutional standing to bring the suit. *Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 607 (6th Cir. 2007). This constitutional standing has three elements—a plaintiff must (1) have suffered an injury in fact, (2) demonstrate causation, and (3) prove a likelihood that a favorable decision by the court could redress the plaintiff's injury. *Miller v. City of Wickliffe*, 852 F.3d 497, 502-03 (6th

7

Cir. 2017).[4] "[C]ourts must decide jurisdictional issues before merits issues." *In re: 2016 Primary Election*, 836 F.3d 584, 587 (6th Cir. 2016).

As stated, for the Court to have jurisdiction over Plaintiffs' claims, Defendants must have some legally required, nondiscretionary duty to take action on Taleb's visa application. Defendants assert they have already taken the only legally required action by refusing the visa. Plaintiffs contend that the "refusal" here was not final, and the Consulate has an "ongoing duty under 22 C.F.R. § 42.81(a) to make a definitive determination to 'issue or refuse' the visa." (Doc. 8, at 2). They contend that because the Consulate "has acknowledged that further security checks remain ongoing" and the "CEAC portal likewise reflects a refusal that is subject to change upon completion of 'additional processing'", no final determination has been made as

---

4. Although Defendants frame their argument around mootness, the Court finds that standing is the more appropriate analysis. However, as another Court observed in a recent case, mootness and standing are related concepts, and at core, the question under either is one of whether a "case" or "controversy" is presented:

> "Standing seeks to ensure the plaintiff has a personal stake in the outcome of the controve[r]sy at the outset of litigation[,]" whereas mootness "is akin to saying that, although an actual case or controversy once existed, changed circumstances have intervened to destroy standing." *Sumpter v. Wayne Cnty.*, 868 F.3d 473, 490 (6th Cir. 2017) (internal quotation marks and citations omitted). In other words, "standing applies at the sound of the starting gun, and mootness picks up the baton from there." *Id.* Here, Defendants do not claim that the case-or-controversy requirement was extinguished during litigation; rather, Defendants claim that the case or controversy was extinguished when they refused Mr. and Mrs. Sankari's visas after their consular interview. Regardless of whether the Court analyzes the jurisdictional issue under the standing or mootness doctrines, the outcome is the same because the crux of each doctrine is whether a case or controversy exists.

*Sankari v. U.S. Dep't of State*, 2025 WL 1550231, at *5 n.5 (E.D. Mich.). Similarly, under either doctrine here, the result is the same.

mandated by 22 C.F.R. § 42.81(a). *Id.* at 4. Thus, at bottom, the parties agree that Taleb's visa has been refused.[5] They simply disagree over what that means and whether more is required.

The problem with Plaintiffs' argument that Defendants have an ongoing duty to act here is that they do not point to any law or regulation requiring Defendants to complete the cited "administrative processing", reconsider a refusal, or render any further determination. *See Yaghoubnezhad v. Stufft*, 734 F. Supp. 3d 87, 103 (D.D.C. 2024) ("At bottom, although State has a duty to 'issue' or 'refuse' Plaintiffs' visa applications, no statute nor regulation requires anything more—whether that be a 'final' decision or the completion of 'administrative processing.'"); *Sankari*, 2025 WL 1550231, at *5 ("Because the statute and regulations do not provide a 'specific, unequivocal command' that Defendants issue a final, unreviewable decision on a visa, or to conduct or complete administrative processing once a visa has been refused, there is no action here that Defendants have unlawfully withheld or unreasonably delayed.") (quoting *Norton*, 542 U.S. at 63). Plaintiffs here rely only on 22 C.F.R. § 42.81(a) as the source of the Government's duty to act. But the Court finds the Government has fulfilled that duty.

In short, "the *only* duty that the statute or regulations impose on the consular officers is a duty to grant or refuse a visa." *Sedaghatdoust v. Blinken*, 735 F. Supp. 3d 1, 7 (D.D.C. 2024). "And [once] that duty has been performed [and an individual's] application has been refused[,] [t]he statute does *not* create an additional duty to engage in post-refusal reconsideration of the visa application." *Id.* In these circumstances, "Defendants have fully performed the only duties

---

5. Although Plaintiffs' Complaint and Taleb's Declaration assert that the consular officer only told Taleb her case would "undergo administrative processing" and gave no further information (Doc. 1, at ¶ 21; Doc. 1-1), Plaintiffs' Complaint also alleges the CEAC website reflects the visa application has been "refused." ((Doc. 1, at ¶ 27). And the Government presents evidence that the visa application was refused. (Doc. 7-2, at ¶ 8). And although Plaintiffs' opposition brief disputes the finality of the refusal, it does recognize there was a refusal issued.

they have, and mandamus will not lie against them for failure to perform further acts that are within their own discretion." *Id.* (internal citations omitted); *see also Yared v. Nepal*, 2025 WL 1067738, at *4 (N.D. Ohio) ("There is no mention in any statute or regulation of an 'initial' refusal. Nor is there any mention of 'temporarily' refusing a visa while seeking supplemental evidence through administrative processing."). That is, "[t]he possibility that Defendants will reconsider this refusal 'is immaterial, when no statute, regulation, or other source imposes a duty to reconsider it.'" *Sankari*, 2025 WL 1550231, at *5 (quoting *Pegah Z. v. Blinken*, 2025 WL 629343, at *4 (S.D. Tex.)). "To hold otherwise, the Court would be forced to 'defin[e] what it means to conclude a visa application in a manner that neither a federal statute nor regulation clearly requires.'" *Id.* (quoting *Karimova v. Abate*, 2024 WL 3517852, at *4 (D.C. Cir.)); *see also Yaghoubnezhad*, 734 F. Supp. 3d at 102 ("Plaintiffs ask the Court to impose a duty that has no basis in the INA or its implementing regulations.").

An unpublished decision by the Sixth Circuit also supports the above conclusion. In *Hussein v. Beecroft*, a U.S. citizen husband submitted a Form I-130 Petition to bring his Yemeni citizen wife to the United States. 782 F. App'x 437, 439-40 (6th Cir. 2009). At the wife's visa interview, the consular officer had suspicions about the marriage and recommended DNA testing of the couple's son as corroboration. But "[b]ecause of the questions surrounding the marriage, the consular officer refused to issue [the] visa, citing 8 U.S.C. § 1201(g), and waited for confirming DNA results." *Id.* at 440. The consular officer thereafter returned the I-130 petition "for reconsideration and possible revocation." *Id.* The plaintiffs later submitted DNA testing and were, at the time of the case, "waiting for re-adjudication" of the I-130 petition. *Id.* They alleged that the visa application "remain[ed] in 'administrative processing,' and defendants never formally adjudicated [the] application despite their legal duty to do so." *Id.* The Sixth Circuit

10

held that plaintiffs' claims were moot where "the government fully discharged its clear duty to adjudicate [the] visa application" when it was denied under 8 U.S.C. 1201(g). *Id.* at 441-42.[6] A recent unpublished decision from the D.C. Circuit also supports the same conclusion. *See Karimova*, 2024 WL 3517852, at *3-6 (finding that refusing the visa discharges the only discrete agency action required by law regardless of whether additional action may later be taken).

This is not to say that Plaintiffs' position lacks support. There is a significant split of authority and in contrast to the authority cited above, many courts around the country have "concluded that a refused visa placed in administrative processing has not been adjudicated through conclusion, as required." *See Yared*, 2025 WL 1067738, at *3 n.3 (citing *Awal v. U.S. Dep't of State*, 2024 WL 4979661, at *8-9 (D. Minn.) (collecting cases that support this proposition)). But this Court adopts in full a recent analysis by a Michigan District Court as to why these cases are unpersuasive and it finds those above to be better reasoned:

> Courts which hold that there is a continuing legal duty on the Government to complete administrative processing tend to do so because they deem the consular officer's initial refusal "nonfinal." *See, e.g.*, *Yafai*, 2024 WL 2806948, at *3; *Awal v. U.S. Dep't of State*, No. 24-cv-382 (KMM/ECW), 2024 WL 4979661, at *9 (D. Minn. Dec. 4, 2024); *Gonzalez v. Offutt*, No. 1:23-cv-547, 2024 WL 2847962, at *4 (S.D. Ohio June 5, 2024); *Hajizadeh v. Blinken*, No. 23-1766 (LLA), 2024 WL 3638336, at *3 (D.D.C. Aug. 2, 2024). Other courts consider the language that the Government used in refusing an application—such as telling the applicant that he "will" receive another adjudication once administrative processing is complete—which leads those courts to find that the initial refusal was not a true refusal, but a

---

6. Puzzlingly, Plaintiffs' opposition brief cites this same case and states:

> As one court explained:
> "A consular officer's duty to 'issue or refuse' a visa is not satisfied by an indefinite § 221(g) refusal, which merely signals the need for further review or additional information before a final discretionary determination can be made."
> —*See*, e.g., Hussein v. Beecroft, 782 F. App'x 437, 441-42 (6th Cir. 2019) (distinguishing an interim 221(g) denial from a final, substantive refusal).

The cited quotation does not appear in the Sixth Circuit's *Hussein* opinion, nor was the Court able to locate the quotation in any federal court case available on Westlaw or LexisNexis.

11

> deferral of a decision. *See, e.g.*, *Ebrahimi v. Blinken*, 732 F. Supp. 3d 894, 904 (N.D. Ill. 2024); *Billoo v. Baran*, No. 2:21-cv-05401-CBM-(JPRx), 2022 WL 1841611, at *4 (C.D. Cal. Mar. 18, 2022). In addition, some courts discuss the practical issues that would result if the Government were allowed to leave cases in administrative processing without the ability of courts to compel their completion. *See, e.g.*, *Omar*, 756 F. Supp. 3d at 534; *Awal*, 2024 WL 4979661, at *9.
>
> These are not proper considerations in determining whether to grant mandamus relief in this case. The INA and its regulations do not speak to the need for a consular officer "to reach a more definitive decision on an application that has already been refused." *Sarshartehran*, 2025 WL 1261787, at *7. Thus, the fact that the consular official may reconsider an application does not impact the Court's analysis in this matter. *See Sackett v. EPA*, 566 U.S. 120, 127 ("The mere possibility that an agency might reconsider . . . does not suffice to make an otherwise final agency action nonfinal."). Similarly, even if the Government tells the visa applicant that his application will be re-adjudicated, it "is irrelevant to the relief [the applicant] seeks," because the Court's authority to compel agency action "is confined to compelling only discrete, *legally required* agency actions." *Yared*, 2025 WL 1067738, at *4 (emphasis added). Without pointing to binding law *requiring* re-adjudication, the Government's statement to the applicant that it "will" re-adjudicate an application makes no difference. *Id.* Moreover, it is not for the Court to fix problems in the statutory and regulatory scheme that impact visa applicants whose cases are placed into administrative processing. Such issues are for the legislature or rulemaking body to resolve. *See Cobble v. Bernanke*, No. 3:08CV-516-S, 2008 WL 5054595, at *1 (W.D. Ky. Nov. 24, 2008) (quoting *In re Snavely*, 314 B.R. 808, 818 (9th Cir. 2004)) ("We cannot legislate from the bench to make the statute into something it is not[.]").

*Sankari*, 2025 WL 1550231, at *7.

In sum, the Court's authority is limited to compelling discrete, legally required action. Ultimately, Plaintiffs have not identified that any Defendant has "failed to take a *discrete* agency action that it is *required to take*." *Norton*, 542 U.S. at 64. Rather, Defendants have refused Taleb's visa. This is all that the statute and regulations require. *See also Hussein*, 782 F. App'x at 442-43 ("[G]iven that defendants fully discharged their duties under the law, there was simply nothing else the district court could order defendants to do[.]"); *Karimova*, 2024 WL 3517852 at *4 ("Nothing in federal law speaks to the ability of a consul, after [refusing a visa application], to hold onto the application in case circumstances later change in the applicant's favor[.]"). And the

12

"background principle of judicial abstinence" in immigration cases "underscores the absence of any clear command in law or precedent for the action [Plaintiffs] seek[] to compel." *Karimova*, 2024 WL 3517852, at *6.

As such, the Court finds Plaintiffs lack standing and the Court lacks jurisdiction over Plaintiffs' claims under the APA and Mandamus Act.[7]

## Conclusion

For the foregoing reasons, good cause appearing, it is

ORDERED that Defendants' Motion to Dismiss (Doc. 7) be, and the same hereby is, GRANTED.

 s/ *James R. Knepp II*
UNITED STATES DISTRICT JUDGE

Dated: August 14, 2025

---

7. Because the Court resolves the case on the above jurisdictional grounds, it does not reach Defendants' additional arguments regarding consular nonreviewability or whether any alleged delay constitutes "unreasonable delay" under the APA.